UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AMELIA PRIDMORE, )<br>)<br>Plaintiff )<br>)<br>vs. )<br>)<br>WAL-MART STORES EAST, L.P., )<br>)<br>Defendant ) | Case No. 2:05-cv-01807-HGD |

### MEMORANDUM OPINION

The above-entitled civil action is before the court on the motion for summary judgment filed by defendant. (Doc. #10). This matter is before the undersigned magistrate judge based on the consent of the parties pursuant to 28 U.S.C. § 636(c).

Plaintiff, Amelia Pridmore, slipped and fell in the Adamsville, Alabama, Wal-Mart on July 11, 2004, injuring herself. It is undisputed that she slipped on a liquid, mouthwash, that had been spilled on the floor of the aisle where she was walking at the time of the accident. Defendant, Wal-Mart Stores East, L.P. (Wal-Mart), has moved for summary judgment asserting that, as a business invitee, plaintiff was injured by a hazard that was open and obvious and that it did not know, nor is there evidence that it should have known, that there had been a spill which had created a hazard to store customers. Plaintiff denies that the danger was open and obvious and

asserts that there is evidence in the record that reflects that Wal-Mart should have known of the existence of this hazard.

## SUMMARY JUDGMENT STANDARD

This matter is considered by the court pursuant to the provisions of Rule 56, Fed.R.Civ.P.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).  Thus, summary judgment is appropriate where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  The substantive law governing the action determines whether an element is essential. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510.  A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the

absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also*, *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512.  The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in her favor.  *Id.* at 255, 106 S.Ct. at 2514, *citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970).  It is, therefore, under this standard that the court must determine whether the plaintiff can meet her burden of coming forward with sufficient evidence as to each material element of her claim sufficient to permit a reasonable jury to find in her favor.

## FACTUAL BACKGROUND

The record reflects that plaintiff and her husband went to the Adamsville, Alabama, Wal-Mart on July 11, 2004. After entering the store, plaintiff's husband got a shopping cart and they walked into the Health and Beauty Aids (HBA) section of the store. The store was well-lit and the floor was white tile. Shortly thereafter, plaintiff left her husband at a location within the store and, after walking up and down several aisles, she came to the wall of the store that held the incontinence pads. She picked up a package of the pads, which are approximately 14" wide, the size of a package of diapers.

According to plaintiff, she did not see a Wal-Mart employee on any aisle during the time she was in the HBA department. She also did not see any other customers in that area. From this area she walked up to the main aisle that runs perpendicular to the aisle she was on in the HBA department. She began to walk up and down that aisle to try to find her husband.

Plaintiff found her husband and placed the pads in their shopping cart. However, she then found some other pads that she decided to purchase, placed them in the cart and picked up the other package to return it to the HBA department.

Plaintiff turned left off the main aisle onto an aisle that contained the mouthwash items. She then took three to five steps down the middle of the aisle

when she slipped in a puddle of mouthwash.  Plaintiff testified that, if she had seen the mouthwash on the floor, she would have avoided it because she would have recognized it as a hazard.

Prior to slipping in the mouthwash, plaintiff looked down at the floor but did not see any mouthwash on it.  However, she also testified that, when she entered the mouthwash aisle, the location of the spill was so close to where she entered that she never looked in the area where the puddle was.  She was looking beyond this area.  She also stated that she probably did not see it because she thinks there was no color to it.  Nonetheless, she acknowledges that, after the fall, she had liquid on her back, her rear and her legs, had liquid from head to toe, and was wet all the way down to her feet.

Various witnesses gave varying descriptions of the size of the spill.  The aisle itself is six feet wide and 35 feet long.  Plaintiff testified that the spill was six feet across and 10 to 12 feet wide. Wal-Mart Associate Kewanee Carlton testified that it was approximately one and a half feet wide and three to four feet long.  Another witness, Vanessa Blaylock, made a drawing purporting to be the size of the spill she observed.  It is approximately seven and a quarter inches long and eight inches in length.  All of these witnesses observed the spill only after plaintiff had fallen in it.

No photograph of the spill was made by any Wal-Mart employee at the time of the accident.

Sales Associate Kewanee Carlton worked in the HBA department at the time of the accident. Her duties include "zoning" her department, or doing "safety sweeps," to be sure that merchandise is straight and neat on the shelves and the floor is clean and free of debris and spills.

Ms. Carlton was working at the time of the incident and was alerted to it when she heard a woman yell at approximately 9:30 p.m. She went to the aisle where the mouthwash is displayed and observed plaintiff on the floor. Carlton testified that she had been on this aisle five to 15 minutes prior to the time she heard plaintiff scream.

At the time she was on the mouthwash aisle just prior to the accident, the floor was clean and clear of any foreign substance. She was two aisles over, on the shampoo aisle, when she heard plaintiff scream. She immediately ran to the mouthwash aisle and observed plaintiff lying on the floor in spilled green mouthwash. According to Carlton, the spill was 10 to 15 feet from the main aisle or "action alley" that goes through the department.

At this time, Carlton also observed what appeared to be a 24-ounce bottle of mouthwash on the floor beside plaintiff. The bottle was turned over and the cap was off. Carlton testified that the mouthwash was not on the floor when she "zoned" the

aisle five to 15 minutes before the accident. She does not know how the mouthwash got on the floor. It carried a "loud" smell and was a light green substance.

Carlton testified that there is a lot of customer traffic through the HBA department and that it is not uncommon to see loose caps and broken seals on merchandise. If there is a lot of customer traffic and the aisle is in a messy condition, Carlton testified that it can take up to 30 minutes to zone an aisle. Zoning is carried on continuously.

According to Ms. Carlton, she is aware of another incident at Wal-Mart when another associate failed to clean up some spilled liquid which resulted in a man falling and breaking his hip. The associate received disciplinary action by Wal-Mart for her inaction. Ms. Carlton states that video taping occurs in each department, but she does not know why this incident was not captured on tape. However, Wal-Mart employee Thomas Johnson testified that he has seen cameras in the general area of the HBA department but that they are mostly in the high-risk areas, such as electronics. He did not know whether the HBA camera would have covered this specific aisle.

When she observed plaintiff on the floor, Ms. Carlton told someone else to call a "code white" which is a call for a manager to come to the scene of an accident. Shortly thereafter, several men, including two managers, showed up and took over the

situation. She wrote out a statement for the managers in which she also stated that she had left the mouthwash aisle no longer than five to 15 minutes before and that there was no mouthwash on the floor at that time.

Vanessa Blaylock testified that she witnessed the incident as it occurred. Ms. Blaylock testified that she began to watch Ms. Pridmore and her husband because Mr. Pridmore was behaving like he had Alzheimer's and that Ms. Pridmore was having to watch him to keep him from slipping away from her. She testified that the slip and fall occurred when Ms. Pridmore walked around in front of a shopping basket, slipped and fell.

Blaylock testified that she observed mouthwash on the floor and a mouthwash bottle. She described the spill as approximately 7.25" x 8" and located toward the edge of the shelf. She further stated that the spill was not obvious and that she did not see it until she got to where plaintiff had fallen.

Subsequent to the initiation of this suit, as part of discovery in this case, counsel for both parties were present when most of a bottle of Equate brand green mouthwash was poured on the floor. The results were photographed and are included as plaintiff's Exhibit 15.

## DISCUSSION

Plaintiff has withdrawn her claim that defendant's conduct in this matter was wanton. (Doc. #19, Plaintiff's Opposition to Summary Judgment, at 15). Therefore, this issue will not be addressed.

Wal-Mart makes two arguments with regard to its motion for summary judgment. They are (1) that the spill was open and obvious and should have been seen by plaintiff in the exercise of ordinary care, and (2) that there is no evidence that Wal-Mart had actual or constructive notice of the spill.

There is no question that Ms. Pridmore was an invitee on defendant's premises. *See Browder v. Food Giant, Inc.*, 854 So.2d 594, 595 (Ala.Civ.App. 2002) ("When a person visits the premises for commercial purposes . . . the person is an invitee.") With regard to an obvious danger, "there is no duty to warn of open and obvious defects which the injured party should be aware of in the exercise of reasonable care," *Owens v. National Sec. of Alabama, Inc.*, 454 So.2d 1387, 1389 (Ala. 1984). The Alabama Court of Civil Appeals, in *Hartzog v. Compass Bank*, 686 So.2d 325 (Ala.Civ.App. 1996), stated, in regard to the facts of a slip-and-fall case, that for "a condition to be 'obvious,' the condition and the risk must be apparent to, and of the type that would be recognized by, a reasonable person in the position of the invitee." *Id*. at 327 (citing *Shelton v. Boston Fin., Inc.*, 638 So.2d 824 (Ala.1994)). However,

"questions of openness and obviousness of a defect or danger and of the plaintiff's knowledge are generally not to be resolved on a motion for summary judgment." *Harvell v. Johnson*, 598 So.2d 881, 883 (Ala. 1992).

The testimony concerning the size and location of the spill that caused Ms. Pridmore to slip and fall are widely varied. Whether the offending substance created an open and obvious danger is an issue appropriately decided by the jury. *Harris v. Flagstar Enters., Inc.*, 685 So.2d 760, 762-63 (Ala.Civ.App. 1996).

That does not end the matter, however. Even assuming the substance was not open and obvious, Wal-Mart is not necessarily liable for Ms. Pridmore's injuries. Wal-Mart owed a duty to Ms. Pridmore to "use reasonable care and diligence to keep the premises in a safe condition or, if the premises were in a dangerous condition, to give sufficient warning so that an invitee might avoid danger by the use of ordinary care." *Boudousquie v. Marriott Mgmt. Servs. Corp.*, 669 So.2d 998, 1000 (Ala.Civ.App. 1995). "'The entire basis of [a store owner's] liability rests upon [its] superior knowledge of the danger which causes the [customer's] injuries. Therefore, if that superior knowledge is lacking, as when the danger is obvious, the [store owner] cannot be held liable.'" *Denmark v. Mercantile Stores Co.*, 844 So.2d 1189, 1194 (Ala. 2002) (quoting *Quillen v. Quillen*, 388 So.2d 985, 989 (Ala. 1980)).

In order for Ms. Pridmore to recover, she must prove that her "fall resulted from a defect or instrumentality on the premises; that the defect was the result of the defendant's negligence; and that the defendant had or should have had notice of the defect before the time of the accident." *Hale v. Sequoyah Caverns & Campgrounds, Inc.*, 612 So.2d 1162, 1164 (Ala. 1992). In *Maddox v. K-Mart Corp.*, 565 So.2d 14 (Ala. 1990), the Alabama Supreme Court summarized the applicable law in "slip and fall" cases:

> [A] storekeeper is under a duty to exercise reasonable care to provide and maintain reasonably safe premises for the use of his customers. However, the storekeeper is not an "insurer of the customer's safety," and is liable for injury only if he "negligently fails to use reasonable care in maintaining his premises in a reasonably safe condition." The plaintiffs must prove that the injury was proximately caused by the negligence of [the storekeeper] or one of its servants or employees. Actual or constructive notice of the presence of the substance must be proven before [the storekeeper] can be held responsible for the injury. Furthermore, the plaintiffs must prove (1) that the substance slipped upon had been on the floor a sufficient length of time to impute constructive notice to [the storekeeper]; or (2) that [the storekeeper] had actual notice that the substance was on the floor; or (3) that [the storekeeper] was delinquent in not discovering and removing the substance.

565 So.2d at 16. *See also Dolgencorp, Inc. v. Hall*, 890 So.2d 98, 101 (Ala. 2003); *Cash v. Winn-Dixie Montgomery, Inc.*, 418 So.2d 874, 876 (Ala. 1982).

There is no evidence that Wal-Mart had actual notice that mouthwash had spilled onto the floor where plaintiff slipped and fell. However, plaintiff asserts that Wal-Mart should have known about the spill. The basis for this includes the fact that there is evidence that it is not uncommon for employees to find loose caps on shampoo, mouthwash, and the like. Further, plaintiff notes the testimony of Ms. Carlton wherein she states that she was two aisles over from the location of the accident when it occurred and that it takes her as long as 30 minutes to zone an aisle. Based on this, plaintiff extrapolates to conclude that it is reasonable to infer that it had been at least an hour since Ms. Carlton had been on the mouthwash aisle.

Plaintiff also notes that she testified that she had been in the HBA department for at least 15 minutes and never saw a Wal-Mart employee. Ms. Blaylock also testified that she never saw a Wal-Mart employee while she was in the HBA department just before the accident.

This evidence is insufficient to demonstrate that the substance was on the floor long enough to establish that Wal-Mart should have known about it or that it was delinquent in not discovering and removing the substance. Ms. Pridmore herself testified that she did not see the substance she slipped in and does not know how long it had been there.

Although Ms. Carlton testified that the HBA department is subject to a lot of traffic, by all accounts there was very little traffic in the HBA department at the time of this accident by either Wal-Mart employees or customers. Ms. Pridmore testified that she saw neither Wal-Mart employees nor customers in the HBA department during the 15 or so minutes she spent in that department. Ms. Carlton testified that it can take as long as thirty minutes to zone an aisle *if* the aisle is messy. Obviously, the aisles in the department could not have required much zoning if there was as little traffic in the area as that testified to by plaintiff. Furthermore, Ms. Carlton testified that she had been on the aisle and zoned it within five to 15 minutes of plaintiff's fall and observed nothing on the floor at that time. There is no evidence to the contrary. Thus, it is *not* reasonable to infer that an hour or more may have passed since Ms. Carlton performed a safety sweep on this aisle.

Based on the evidence presented, Wal-Mart has made a *prima facie* showing that it had no actual or constructive knowledge of the presence of the mouthwash on the floor prior to the incident and was not derelict in failing to discover and remove it. It is plaintiff's obligation to show that there exists a question of fact as to whether the substance had been on the floor a sufficient length of time to impute constructive notice to Wal-Mart or that Wal-Mart was delinquent in not discovering and removing the substance. Based on the testimony presented, the court concludes that the

plaintiff has failed to meet this burden. Therefore, defendant's motion for summary judgment is due to be granted. A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 29th day of September, 2006.

                                                    HARWELL G. DAVIS, III
                                                    UNITED STATES MAGISTRATE JUDGE